# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                     No. CR 12-2375 JB

URIEL J. ESQUIVEL,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Uriel Esquivel's Appeal of Detention Order, filed November 5, 2012 (Doc. 47)("Detention Appeal").  The Court held a hearing on November 20, 2012.  The primary issue is whether the Court should vacate the Honorable Lorenzo F. Garcia, United States Magistrate Judge's Detention Order Pending Trial, filed August 28, 2012 (Doc. 19)("Detention Order"), and release Uriel J. Esquivel pre-trial on conditions.  The Court finds that U. Esquivel has met his burden of production in response to the statutory presumption that he should be detained pre-trial.  The Court also finds, however, that the Plaintiff United States of America has shown by a preponderance of the evidence that U. Esquivel is a flight risk and has shown by clear-and-convincing evidence that he is a danger to the community.  The Court, thus, affirms Judge Garcia's Detention Order and denies U. Esquivel's Detention Appeal.

## FACTUAL BACKGROUND

U. Esquivel is a United States citizen who resides in Lamar, Colorado.  He does not have substantial foreign ties, but he has family in Mexico.  It appears as though U. Esquivel has led a double life: on one hand, his family and community believe that he is a good, honest, and caring

man; on the other hand, his involvement in this federal offense indicates that he has been dealing in controlled substances for many years.

1.  **Background and Criminal History**.

U. Esquivel is an American citizen.  He was born in Zacatecas, Mexico, in 1954, but moved to Lamar, Colorado in 1971.  See Detention Appeal at 1.  He became a naturalized citizen in 1999.  See Detention Appeal at 1.  U. Esquivel still resides in Lamar with his wife, JoAnn Esquivel, age 62, whom he married in 1973.[1]  See United States Probation Office Bail Report at 1-2, dated August 27, 2012 ("Bail Report").  The home in which U. Esquivel resided with his wife belongs to his daughter, Shandra Esquivel, age 37.  See Detention Appeal at 6.  U. Esquivel and his wife, who is disabled and unable to work because of severe bone-on-bone arthritis in both knees, have lived in S. Esquivel's home for the last five years.  See Detention Appeal at 3; Bail Report at 1.  U. Esquivel and his wife are raising U. Esquivel's fourteen-year-old niece.  See Detention Appeal at 2.  S. Esquivel is willing to serve as a third-party custodian for her father in Lamar, and she is willing to post her home in Lamar as a property bond for her father's release. See Detention Appeal at 6.  The Esquivels' residence and S. Esquivel's ownership of the home was verified by an inquiry of Thompson Reuters CLEAR database and by J. Esquivel.[2]  See Bail Report at 1-2.

_____

[1] In the Bail Report, U. Esquivel's wife is referred to as "Yolanda," Bail Report at 2, while at the hearing and in the Detention Appeal, she is referred to as JoAnn, Transcript of Hearing (taken November 20, 2012) at 4:5 (Garcia)(The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers); Detention Appeal at 2.  For purposes of this motion, the Court will refer to her as "J. Esquivel."

[2] "CLEAR" stands for Consolidated Lead Evaluation and Reporting, and is an investigative tool that allows users to search public records.  CLEAR, http://clear.thomsonreuters.com/clear_home/about.htm (last visited Nov. 19, 2012).

U. Esquivel reports that he does not have a United States passport, and even though U. Esquivel's father still lives in Zacatecas, the last time U. Esquivel traveled outside the United States was four years ago to visit his mother, in Zacatecas, who was ill and subsequently passed away. See Bail Report at 1-2. U. Esquivel also reports that he has eight siblings living in the Lamar and San Fernando, California areas, with whom he is in contact on a weekly basis. See Bail Report at 1.

U. Esquivel reports that he had seven years of education in Mexico, but no further education. See Bail Report at 2. U. Esquivel has had a full time job working with horses from 2006. See Bail Report at 2. Before his present employment, he worked for Paul's Body Shop from 1990-2006, and at Colorado Beef from 1974-1990. See Bail Report at 2. U. Esquivel reports $800.00 in monthly payroll income. See Bail Report at 2. U. Esquivel has monthly payments totaling $700.00 for rent and groceries. See Bail Report at 2.

U. Esquivel has a limited criminal record, and no history of violence. See Bail Report at 4. On February 12, 2009, U. Esquivel was charged in Lamar with (i) Count 1: Distribution of a Schedule II Controlled Substance; and (ii) Count 2: Possession With Intent to Distribute of a Schedule Substance II Controlled Substance; in March, 2010, U. Esquivel pled guilty to Count 2, and the court sentenced him to four-years probation, assessed fines and fees, and instructed that he complete forty-eight hours of community service. See Bail Report at 4. On August 27, 2012, a warrant was issued for probation revocation. See Bail Report at 4. The United States Probation Office ("USPO") received notice in November from a Colorado State Probation Officer who "stated that should the defendant be released from federal custody he would be extradited to Colorado." Addendum to Bail Report from United States Probation Officer Annie Candelaria to the Honorable James O. Browning, dated November 14, 2012, at 1 ("Bail Report

Addendum").  Although U. Esquivel's record indicates involvement with illegal drugs, he did not discuss any current alcohol or drug use with the USPO, see Bail Report at 3, but he reported that he is currently taking medication for diabetes, high blood pressure, and high cholesterol. See Bail Report at 2.  J. Esquivel stated that her husband does not have a history of alcohol or drug use.  See Bail Report at 3.

### 2.    Circumstances of Charged Criminal Activity.

U. Esquivel's arrest on August 25, 2012, was the result of an investigation conducted by Homeland Security Investigation ("HSI") agents and federal agents acting in an undercover capacity ("UCAs").  Affidavit of Gabriel Lucero ¶ 1, at 2, executed August 27, 2012, filed August 27, 2012 (Doc. 2)("Lucero Aff.").[3]  On or about August 25, 2012, UCAs informed HSI agents that a drug transaction was set to occur at the Home Depot parking lot in Rio Rancho, New Mexico.  See id. ¶ 6, at 3.  The UCAs had arranged a sale of cocaine, in an amount weighing approximately six kilograms.  See id. ¶ 6, at 3.  The agreed price was $24,000.00 per kilogram, and the intended purchasers were driving from Colorado to New Mexico to conduct the transaction.  See id. ¶ 6, at 3.

HSI agents viewed the alleged purchaser's vehicle, a white pickup truck with Colorado license plates, arrive at the Home Depot around 11:00 a.m. on August 25, 2012.  See id. ¶ 8, at 3. The alleged purchaser , U. Esquivel, whom the UCAs knew, was inside the pickup truck with an unknown individual.  See id. ¶¶ 6, 8, at 3.  U. Esquivel and David Solorio parked their truck next to a black sport-utility-vehicle ("SUV"), which the UCAs had informed U. Esquivel and Solorio was their car.  See Lucero Aff. ¶ 9, at 3-4.

---

[3] The Lucero Aff. is attached to the Criminal Complaint, and was filed with the Court, together with the Criminal Complaint, as Doc. 2.  The Court's citations are to the page numbers provided upon the documents' filing with the Court, and are located in the upper-right-hand corner of the Criminal Complaint and Lucero Aff.  See Criminal Complaint, filed August 27, 2012 (Doc. 2).

Upon arrival, Solorio asked the UCAs if he could get "ten to twenty keys of cocaine to Atlanta for [Solorio] and his brother." Id. ¶ 10, at 4. Solorio informed the UCAs that his brother was a "money man" for some individuals with cartel ties located in Atlanta, Georgia. Id. ¶ 10, at 4. Solorio informed the UCAs that he had not been able to obtain cocaine for some time, because "several of their cocaine connections had been 'busted.'" Id. ¶ 10, at 4. Solorio told the UCAs that the cocaine, of which U. Esquivel had negotiated the purchase that day, belonged to Solorio. See Id. ¶ 10, at 4. U. Esquivel informed the UCAs that Solorio had been working with U. Esquivel for some time, and U. Esquivel was the only one to open one of the packages of cocaine before the purchase took place. See Lucero Aff. ¶ 12, at 4.

When an UCA asked U. Esquivel to call the "money guy," Solorio told the UCAs that the "money guy" worked for him. Id. ¶ 11, at 4. Solorio told the UCAs that the "'money guy' would not have any problems if he were stopped by law enforcement because the money was in a false compartment." Id. ¶ 11, at 4. Approximately fifteen to twenty minutes after Solorio made a telephone call, a Silver Nissan Pathfinder, with Kansas License plates, arrived at the Home Depot and parked next to the UCAs' black SUV. See id. ¶ 13, at 4. Omar Bustillos was later identified as the driver of the Pathfinder. See id. ¶ 14, at 4. When the Pathfinder arrived, Solorio, U. Esquivel, and Bustillos all went to the rear of the vehicle. The UCAs witnessed Bustillos removing money from the back seat of the Pathfinder. One UCA saw Bustillos hand money to both U. Esquivel and Solorio. U. Esquivel told the UCAs that Bustillos had brought approximately $150,000.00 to the transaction. See id. ¶ 15, at 4. Bustillos handed a plastic bag to an UCA, and the UCA put the bag in the black SUV. See Lucero Aff. ¶ 16, at 4. The same UCA gave Bustillos and Solorio a blue duffle bag containing cocaine, and Bustillos placed the cocaine in the Pathfinder. See id. ¶ 17, at 5.

Agents in the black SUV counted approximately $144,000.00 in cash in the plastic bag given to the UCA.  The blue duffle bag in the Pathfinder contained approximately six kilograms of cocaine.  See id. ¶ 18, at 5.  The cocaine was later weighed at 6,915.73 grams.  See id. ¶ 20, at 5.

## PROCEDURAL BACKGROUND

On August 27, 2012, the United States charged U. Esquivel  with violations of 21 U.S.C. § 841 (b)(1)(A), Possession with Intent to Distribute Cocaine, and 21 U.S.C. § 846, Conspiracy. See Criminal Complaint at 1, filed Aug. 27, 2012 (Doc. 2); Response to Defendant's Appeal of Detention Pending Trial ¶ 1 at 1, filed November 16, 2012 (Doc. 50)("United States' Response").   U. Esquivel was arrested on August 25, 2012, along with his co-Defendants, Bustillos and Solorio, pursuant to a warrant and the Criminal Complaint.  See Bail Report Addendum at 1.  U. Esquivel was indicted on September 25, 2012, for violations of 18 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2, aiding and abetting.  See Indictment at 1, filed September 25, 2012 (Doc. 30).

The USPO reports that U. Esquivel poses a risk of nonappearance, because of his: (i) outstanding arrest warrant; (ii) past poor performance under community supervision and non-compliance with Court orders; and (iii) his status as a probation absconder.  See Bail Report at 2. The USPO reports that U. Esquivel poses a risk of danger, because of: (i) the nature of his alleged offense; (ii) the presence of previous involvement with similar drug trafficking offenses in his arrest and conviction history; (iii) other pending criminal charges (probation revocation); and (iv) his pattern of similar criminal activity.  See Bail Report at 2.  The USPO recommended that U. Esquivel be detained before trial, "as it appears there is no condition or combination of

conditions that will reasonably assure the appearance of this defendant as required or the safety of the community."  Bail Report at 3.

The United States requested, pursuant to 18 U.S.C. § 3142(e), that U. Esquivel be detained pending trial, asserting that U. Esquivel is a flight risk and a danger to the community. See Motion for Detention Hearing, filed August 27, 2012 (Doc. 11).  On August 28, 2012, U. Esquivel waived his right to a detention hearing and to a preliminary hearing and agreed to be detained, although he reserved the right to petition for the Court to review his detention and set conditions for his release.  See Waiver of Detention Hearing, filed August 28, 2012 (Doc. 17); Waiver of a Preliminary Hearing, filed August 28, 2012 (Doc. 18).  Judge Garcia found that U. Esquivel knowingly, willingly, freely, and voluntarily waived the hearing, and, based on U. Esquivel's waiver, Judge Garcia found that the United States had probable cause to charge U. Esquivel with Possession with Intent to Distribute Cocaine, Attempt, and Conspiracy, and determined that there were no conditions under which U. Esquivel could be released; Judge Garcia, therefore, remanded U. Esquivel to the United States' Marshal Service's custody.  See Clerk's Minutes before Judge Garcia, August 28, 2012 (Doc. 12); Liberty Court Player at 9:42:08-9:44:38 (August 28, 2012)(Court, Aarons).  Judge Garcia also found that, because of U. Esquivel's stipulation to detention, there was clear-and-convincing evidence that warranted U. Esquivel's detention at that time.  See Detention Order at 2.  U. Esquivel's trial is currently set for June 13, 2013.  See Order, filed May 8, 2013 (Doc. 77).

U. Esquivel argues that Congress has imposed "procedural safeguards designed to limit detention to only those instances when it is clearly necessary."  Detention Appeal at 8 (citing United States v. Holloway, 781 F.2d 124, 125-26 (8th Cir. 1986); S. Rep. No. 225, 98th Cong. 1st Sess. 8 (1983)).  U. Esquivel asserts that the Court should resolve any doubts regarding

whether to detain him in his favor, and, thus, in only "rare" cases should pretrial release be denied. Detention Appeal at 7-8 (citing United States v. Townsend, 897 F.2d 989, 994 (9th Cir. 1990)). U. Esquivel asserts that, "a defendant may be detained pending trial only if a judicial officer finds that 'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" Detention Appeal at 7 (quoting 18 U.S.C. § 3142(e)). U. Esquivel contends that a court must find that the United States has proven, by a preponderance, that a defendant is a flight risk, and must prove that the defendant is dangerous to another person or to the community by clear-and-convincing evidence. See Detention Appeal at 6.

U. Esquivel contends that, although his offense carries a presumption in favor of detention pursuant to 18 U.S.C. § 3142, he has overcome that presumption. See Detention Appeal at 6. U. Esquivel contends that, because he is presumed innocent of the charged offenses, he has a substantial liberty interest in avoiding pretrial detention. See Detention Appeal at 7. U. Esquivel argues, thus, that "the district court must dispose of every alternative before ordering pretrial incarceration under the Bail Reform Act." Detention Appeal at 7 (citing United States v. Fernandez-Alfonso, 818 F.2d 477, 478 (9th Cir. 1987)).

Finally, U. Esquivel argues that he has rebutted the presumption of detention "based on the showing of letters attesting to Mr. Esquivel's history and characteristics, his ties to the community of Lamar, and his daughter's clearance to serve as third party custodian." Detention Appeal at 6. U. Esquivel contends that he has presented sufficient evidence to show that he is neither a flight risk nor a danger to the community, and, thus, the Court should issue an order releasing him into the custody of S. Esquivel with "any other conditions the Court deems appropriate." Detention Appeal at 8.

The United States opposes U. Esquivel's Detention Appeal.  See United States' Response at 1.  The United States asserts that, although it has the burden of persuasion regarding the risk of flight and dangerousness, U. Esquivel must still produce evidence to rebut the presumption in favor of his detention.  See United States' Response ¶ 5, at 2 (citing United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991)).  The United States contends that, even "if this Court finds that Defendant has met his burden of production by highlighting his ties to Kansas and his family, Defendant is still unable to overcome the presumption of detention in light of the other factors in 18 U.S.C. [sic] 3142(g)."[4]   United States' Response ¶ 7, at 2.   The United States asserts that Congress has specifically enumerated that the nature and circumstances of U. Esquivel's offense, which carries a mandatory ten-year prison sentence, are "subject to a rebuttable presumption of detention under 18 U.S.C. [sic] 3141(g)."  United States' Response ¶ 8, at 3 ("'The rebuttable presumption in drug-trafficking cases is statutory, and arises out of Congress' concern that individuals involved in drug trafficking often have foreign contacts and the ability to leave the country, and incentives to remain active in the drug trade.'" (quoting United States v. Disher, 650 F. Supp. 2d 1131, 1136 (D.N.M. 2009)(Browning, J.)).

The United States also contends that the evidence against U. Esquivel is substantial, arising from the attempted purchase of approximately seven kilograms of cocaine for approximately $150,000.00 in cash.  See United States' Response ¶ 9, at 3.  The United States argues that the size of this drug transaction indicates that U. Esquivel "has graduated from the novice or apprenticeship program of a drug trafficking organization, and has attained some level of seniority."  United States' Response ¶ 9, at 3.  The United States alleges that the "complaint

_____

[4] The United States' Response refers to U. Esquivel living in Garden City, Kansas. During the hearing, the attorney for the Government explained "it was my understanding that they were all from Kansas.  That was a mistaken understanding obviously."  Tr. at 19:24:20-1 (Stanford).

goes on to state that it was U. Esquivel who told Solorio to call the 'money guy,' and [that] Esquivel was the one who negotiated the price of the 6 kilograms, and who opened the cocaine for the UCA to verify."  United States' Response ¶ 9, at 3 (quoting Lucero Aff. ¶¶ 11-12, at 4). The United States also argues that the purpose of the rebuttable presumption is "certainly implicated here: an individual in a drug deal of this scale is likely to have either financial resources to leave the country, the support of an organization to help him leave, or both."  United States' Response ¶ 9, at 3(citing <u>United States v. Disher</u>, 650 F. Supp. 2d at 1131).  The United States further states that, because "Esquivel admitted his role in this drug trafficking offense," the evidence weighs in favor of pretrial detention.  United States' Response ¶ 9, at 3 (quoting Lucero Aff. ¶ 21, at 5).

The United States contends that, although U. Esquivel's history and personal characteristics "might support release in other cases, in this case they are not enough to offset the nature and circumstances of the offense and the weight of the evidence," and that U. Esquivel "has no ties to New Mexico.  Faced with severe statutory penalties and little or no incentive to remain in this community, Defendant's risk of flight is high."  United States' Response ¶ 10, at 3.  The United States also argues that the nature and seriousness of the danger posed by U. Esquivel's release support his continued detention.  <u>See</u> United States' Response ¶ 11, at 3-4. The United States argues that the Supreme Court of the United States, and "numerous circuits," have determined that possession with intent to distribute narcotics "constitutes a clear threat to the health, safety, and public welfare of the community."  United States' Response ¶ 11, at 4 (citing <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1002 (1991); <u>United States v. Pina-Aboite</u>, 97 F. App'x 832, 836 (10th Cir. 2004)).  The United States asserts that the scope of U. Esquivel's alleged transaction was "very large," thus, U. Esquivel "appears to be a trusted and valued

member of a drug trafficking group, and his release could well result in the continued distribution of drugs into the community." United States' Response ¶ 13, at 5.

The Court held a detention hearing on November 20, 2012. U. Esquivel asserted that, although he signed a waiver of detention, it was filed by Steve Aarons, U. Esquivel's previous counsel, and "it preserved Mr. Esquivel's right to ask the [ ] Court to set conditions of [release] at a later time." Tr. at 3:17-21 (Garcia). U. Esquivel pointed out that the Detention Appeal laid out the legal standard and included "about 79 pages of letters in support of Mr. Esquivel's release." Tr. 3:22-25 (Garcia). The Court expressed its concern that the large quantity of cocaine at the transaction suggests that U. Esquivel is a local dealer and noted that the image of U. Esquivel as a cocaine dealer is difficult to reconcile with the person the letters portray. See Tr. at 4:13-21 (Court). U. Esquivel asserted that, although he has a criminal history, it is only for one prior conviction and he is not a drug dealer. See Tr. at 4:23-24 (Garcia). U. Esquivel further explained that the letters "came from business men, from people with no criminal record at all. They're outstanding citizens of the community. As well [as from] his daughter [ ] and his wife, they . . . themselves don't have criminal records." Tr. at 4:25-5:3 (Garcia). U. Esquivel explained that, with regard to the Court's concern about the quantity of cocaine involved, according to one of the reports, "Mr. Esquivel would be responsible . . . according to[] the Government[ ] . . . for less than for 2.7 kilograms, less than half of what's been accused." Tr. at 6:1-3 (Garcia). U. Esquivel also noted that he has not been indicted for conspiracy in this matter and that from review of the "discovery that's [been] produced to date which has been very limited . . . no audio recordings [have been] produced and the Government has told defense counsel that there's probably limited audio and no video surveillance in this case which also goes to the weight of the evidence." Tr. 5:9-15 (Garcia).

U. Esquivel asserted that he has rebutted the statutory presumption for detention by producing "some credible evidence contrary to the presumption of detention." Tr. at 6:25-7:3 (Garcia). It is now the Government's burden to prove "by a clear and convincing evidence, a very heavy burden, that Mr. Esquivel is a danger to his community" and that "they just simply can't meet that burden." Tr. at 7:4-6 (Garcia). U. Esquivel also argued that the United States cannot meet the burden by a preponderance of the evidence that U. Esquivel is a flight risk. See Tr. at 7:6-7 (Garcia). U. Esquivel stated that his history and characteristics show that he is not a danger or a flight risk. See Tr. at 7:17-18 (Garcia). U. Esquivel pointed out that the offense did not involve a firearm, that he has no history of violence whatsoever, and that "he was in fact cooperative with agents when they encountered him." Tr. at 7:8-12 (Garcia). U. Esquivel also pointed out that "[h]e doesn't have a passport, he's not a drug user, he has absolutely no failures to appear in his history with the Court. He has one isolated prior conviction." Tr. at 7:20-23 (Garcia). He also asserted that the letters show his strong character, and that he is a man "who just likes to help people and likes to be there . . . and support and . . . help people." Tr. at 7:20-8:8 (Garcia). U. Esquivel also asserted that he should be released because of his medical condition and his wife's medical condition. See Tr. at 8:3-9 (Garcia)("Mr. Esquivel's a diabetic, he also has a high blood pressure and his wife JoAnn . . . walks [with] a cane because she has some medical issues that have been affecting her.").

U. Esquivel argued that the Court should release him into the custody of S. Esquivel. See Tr. at 8:10-11. He explained that "Pretrial and probation department interviewed her, ran her background check, and determined that she would be suitable [as a third-party custodian]." Tr. 8:10-13 (Garcia). U. Esquivel also explained that S. Esquivel is willing to ensure that he is at all court proceedings, and that she is "well aware of [her] duties as third-party custodian, and she's

willing to take that on."  Tr. at 8:19-22 (Garcia).  U. Esquivel stated that S. Esquivel and J. Esquivel drove to Sandoval County to visit U. Esquivel several times and to meet with U. Esquivel's counsel.  See Tr. at 8:13-15 (Garcia).  U. Esquivel offered an additional combination of conditions for release.  First, he offered to post a property bond for S. Esquivel's house, "based on the insurance appraisal . . . of about $159,000."  Tr. at 8:23-9:2 (Garcia).  U. Esquivel explained that S. Esquivel owns the house free and clear, that it was the home where U. Esquivel and J. Esquivel had resided, and that, since U. Esquivel's arrest, S. Esquivel moved into the home to care for J. Esquivel.  See Tr. at 12:24-13:16 (Court, Garcia).  Second, U. Esquivel suggested that the Court require electronic monitoring or home detention, see Tr. at 9:2-4 (Garcia), "[a]ll of these of course with a zero tolerance," Tr. at 9:4-5 (Garcia).

The Court then asked U. Esquivel to explain the circumstances of U. Esquivel's outstanding arrest warrant.  See Tr. at 9:16-18 (Court).  U. Esquivel explained that the revocation was based on the arrest in this federal matter and that, other than the new charges in this case, he has complied with all previous court orders: "He was on probation for two years . . . with absolutely no violations.  He . . . went to all his court proceedings[,] he paid his fines[,] he completed his community service."  Tr. 10:23-11:1 (Garcia).  U. Esquivel asserted, therefore, that the outstanding arrest warrant is "one[] isolate[d] offense," and does not demonstrate "a history or a pattern."  Tr. 11:7-13 (Garcia).  U. Esquivel also explained that a Colorado court has posted a bond on his detention, and there is currently no hold or detainer on U. Esquivel.  See Tr. at 11:14-23 (Garcia)("I have the court record right here that shows the $6,000 bond set by the Colorado court after the probation violation was entered.").

The Court expressed its concerns about U. Esquivel's criminal history, because it evidences a history of drug-related offenses.  The Court noted that U. Esquivel was arrested in

2009 on distribution charges and is now charged with a cocaine-related offense.  <u>See</u> Tr. at 12:6-

12:10 (Court).  U. Esquivel explained that he has been compliant with court orders for three

years and that, although the United States alleges that he is a middle man, he did not have any

drugs or money on him when he was arrested.  <u>See</u> Tr. at 12:11-17 (Garcia).  U. Esquivel stated

that, if the Court is concerned about his danger based on drug trafficking, the Court could put

him "on zero tolerance on a house arrest," and that because "he's now served in federal custody

for several months away from his [family] and his community . . . he knows the severity of what

he's facing here."  Tr. at 12:17-21 (Garcia).

The United States responded that, initially, it was most concerned that U. Esquivel poses

a flight risk, because individuals in "a deal of this size . . . have access [to] funds and people and

other resources that will [allow] them to escape prosecution."  Tr. at 14:12-14 (Stanford).  The

United States further stated that the volume of letters and community support attached to the

Detention Appeal suggests that U. Esquivel is "leading a double life."   Tr. at 14:16-19

(Stanford).  The United States explained that the 2009 conviction invalidates U. Esquivel's

argument that the current charges are a first time offense and show that U. Esquivel has been

leading a double life

> at least from 2009 likely before that and all these nice people who have written
> these nice things about him don't seem to know about that, and a person who
> leads a double life like that . . . [cannot] be trusted to do anything.  He's kept this
> from the people who are closest to him in his life, if these letters are true.  He's
> kept this giant secret from them.

Tr. at 14:23-15:4 (Stanford).  The United States argued that "[t]he reason [the agents] found

[him] is because they had . . . information which led them to believe that he was someone who

engaged in that kind of business" and that "he was someone who they might be able to prevent

from engaging in further types of that business if they were to get involved with him[,] as they did in this case." Tr. at 15:5-13 (Stanford).

The United States asserted that it possesses a recording of U. Esquivel admitting that the Defendants traveled to New Mexico to purchase cocaine and intended to return the cocaine to Colorado. See Tr. at 15:25-16:2 (Stanford). The United States explained that it was having technical difficulties with the recordings: "[T]here are some recordings that are [forthcoming]. . . . I'm just waiting and getting them. The initial ones were not able to be[] played . . . so I had to ask them . . . [to] put them into a format that work[s] on any computer." Tr. at 15:16-18 (Stanford). The United States asserted that, even if the recording cannot be produced, the weight of the evidence against U. Esquivel remains strong, given "his admission and agents['] statements . . . [and that] agent Dave Smith stood there and engaged in this business with [U. Esquivel]." Tr. at 15:25-16:2 (Stanford).

The Court asked the United States what its theory was for how Solorio, from Kansas, came to be in business with U. Esquivel from Colorado. See Tr. at 16:10-15 (Court). The United States explained that, at this point, it is still uncertain of the nature of the Defendants' relationship, but that Solorio and U. Esquivel informed one of the UCAs "that they were related, they were cousins or nephews." Tr. at 16:16-20 (Stanford). The United States explained further that

> it was Mr. Esquivel who did the negotiating for the price, and when the . . . undercover agent said [alright] well show me the goods[,] it was Mr. Esquivel who . . . opened up the cocaine package and said . . . here it is. So clearly he wasn't just along for the ride. He    had some position of authority delegated to him as between these three individuals.

Tr. at 16:25-17:6 (Stanford). The United States explained that it looked like U. Esquivel and Solorio were in positions of higher authority than Bustillos, but, between U. Esquivel and

Solorio, the United States is uncertain which Defendant is in a position of higher authority.  See Tr. at 18:14-25 (Stanford).  The Court asked the United States why it did not charge U. Esquivel with conspiracy.  See Tr. at 17:23-24 (Court).  The United States explained that the Criminal Complaint initially charged conspiracy, but that the Criminal Complaint had "just kind of happened quickly," and that the United States was "still [e]valuating what the relationship between the three men was . . . [and] it's probably likely that a Superseding Indictment may be filed with conspiracy charges and maybe as something else . . . [once it] sort[ed] everything out with the agents and figure[d] out . . . about their relationships."  Tr. at 17:25-18:8 (Stanford).

The Court then asked the United States what its position is on alternatives to U. Esquivel's incarceration.  See Tr. at 19:1-2 (Stanford).  The United States explained that the number of community members showing support for U. Esquivel showed that "they weren't aware that he was doing stuff like this . . . .  [I]t's kind of a big drug deal[].  This isn't a starter deal.  And if he's been able to hide that from them for so long who knows what else he's [hidden] from them."  Tr. at 19:7-14 (Stanford).  The United States stated that it was worried about sending U. Esquivel  "back to an unknown []place where everybody knows him but didn't know him."  Tr. at 20:17-19 (Stanford).  The Court asked whether the United States would approve of sending U. Esquivel to La Posada, a halfway house, under lockdown and with a global positioning satellite ("GPS") tracker.  Tr. at 21:2-6 (Court).  The United States responded that, although placing U. Esquivel at La Posada would be the best alternative to incarceration, incarceration is preferable.  See Tr. at 21:7-13 (Stanford).

The Court expressed its concern that allowing U. Esquivel to return to Lamar for home detention was insufficient, because it would not "pull him out of this environment that he apparently is able to look one way to the community and somehow be . . . involved in some

fairly large drug transactions."  Tr. at 23:8-10 (Court).  U. Esquivel argues that he "didn't even

know Mr. [Bustillos] and it even states in the discovery that [Bustillos] stated to the agents he

never communicated with Esquivel. . . .  [and U. Esquivel] never possessed . . . drugs or money."

Tr. at 25:8-15 (Garcia).   U. Esquivel also asserted that "house arrest to his home [with] the

third[-]party custody[, with] those strict conditions . . . could alleviate dangerousness and the risk

of flight."  Tr. at 25:16-19 (Garcia).

Finally, the Court asked U. Esquivel to distinguish United States v. Disher from his

circumstances.  U. Esquivel explained that there are

> quite stark distinctions between this case and that case . . . .   Disher had prior
> [failure to appear]'s, strong evidence a prior battery firearms and arsenal found, it
> was a large scale drug conspiracy, there was an unnamed third-party custodian,
> many wiretaps, video surveillance in that case, and the Court was discussing
> Congress' intent because there was actual allegations that there were ties in that
> case to foreign . . . []countries and that he was flight risk based on what I just
> listed.  Nothing like that is in this case.

Tr. at 25:24-26:8 (Garcia).  U. Esquivel also asserted that Congress' intent "to limit detention

only to those instances when it's clearly necessary to protect the public" supports his pretrial

release.  Tr. at 26:10-12 (Garcia).

## LAW REGARDING PRETRIAL DETENTION

Pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 through 3150, a defendant

may be detained pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and

upon a finding "that no condition or combination of conditions will reasonably assure the

appearance of the person as required and the safety of any other person and the community."  18

U.S.C. § 3142(e).  At such a hearing, the United States bears the burden of proving risk of flight

by a preponderance of the evidence, and the burden of proving dangerousness by clear-and-

convincing evidence.  See 18 U.S.C. § 3142(f); United States v. Cisneros, 328 F.3d 610, 616

(10th Cir. 2003).  "The rules concerning the admissibility of evidence in criminal trials do not

apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C.

§ 3142(f).  To determine whether pretrial detention is warranted, the judicial officer must

consider the statutory factors set forth in 18 U.S.C. § 3142(g):

> (g)  **Factors to be considered.** -- The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning --
>
> > (1)  the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> >
> > (2)  the weight of the evidence against the person;
> >
> > (3)  the history and characteristics of the person, including --
> >
> > > (A)  the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > >
> > > (B)  whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> >
> > (4)  the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

When a defendant is charged with certain crimes, however, a presumption arises that the defendant is a flight risk and a danger to the community.  See 18 U.S.C. § 3142(e)(3); United States v. Villapudua-Quintero, 308 F. App'x 272, 273 (10th Cir. 2009)(unpublished)(per curiam)(recognizing that 18 U.S.C. § 3142(e) establishes a rebuttable presumption favoring detention in the case of, among other defendants, certain alleged drug offenders).[5]  Section 3142(e)(3)(A) of Title 18 of the United States Code provides that a presumption of detention arises when "there is probable cause to believe that the person committed" certain drug offenses, specifically "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act, or chapter 705 of title 46."  18 U.S.C. § 3142(e)(3)(A).  The United States Court of Appeals for the Tenth Circuit has explained that "[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more."  United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993).  Accord United States v. Holguin, 971 F. Supp. 2d 1082, 1088 (D.N.M. 2011)(Browning, J.).  "'Once the presumption is invoked, the burden of production shifts to the defendant.'"  United States v. Holguin, 791 F. Supp. 2d at 1087 (quoting United States v. Stricklin, 932 F.2d at 1354-55).

---

[5] United States v. Villapudua-Quintero is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that United States v. Villapudua-Quintero has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

To determine whether the defendant has rebutted the presumption of detention, a court must consider: (i) the nature and  circumstances of the crime charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an individual that would be posed by release.  See 18 U.S.C. § 3142(g).  "Should the defendant satisfy his or her burden of production, the United States must then show by a preponderance of the evidence that the defendant presents a risk of flight, or by clear-and-convincing evidence that the defendant presents a danger to the community."  United States v. Holguin, 791 F. Supp. 2d at 1087 (citing United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991)("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.")).  Notably, however, even if the defendant meets his or her burden of production, "the presumption remains a factor for consideration by the district court in determining whether to release or detain."  United States v. Stricklin, 932 F.2d at 1355.  Accord United States v. Mercedes, 254 F.3d at 436.

## THE DISTRICT COURT'S STANDARD OF REVIEW ON APPEALS OF DETENTION

Section 3145(a) of Title 18 provides that a "court having original jurisdiction over the offense" may review a magistrate judge's detention order or release order.  18 U.S.C. § 3145(a)-(b).  "The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo."  United States v. Cisneros, 328 F.3d 610, 616 n.1 (10th Cir. 2003).  "When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts de novo and must make an independent determination of the proper pretrial detention or conditions for release."  United States v.

Rueben, 974 F.2d 580, 585-86 (5th Cir. 1992).  See United States v. Maull, 773 F.2d 1479, 1481 (8th Cir. 1985)(stating that a district court's review of magistrate judge's order setting bond was de novo).

## ANALYSIS

The Court is not aware of any condition, or combination of conditions, under which it may release U. Esquivel pretrial, that would guarantee his appearance in Court and mitigate his danger to the community.  The statutory presumption in favor of detention is present, as he is indicted for a drug-trafficking offense and faces a mandatory minimum sentence of ten years. While U. Esquivel has met his burden of production in support of his Detention Appeal, the United States has demonstrated, by a preponderance of the evidence, that he is a flight risk, and, by clear-and-convincing evidence, that he is a danger to the community.  The evidence against U. Esquivel is weighty, and he faces a lengthy mandatory minimum sentence, which provides an incentive for him to flee.  Although U. Esquivel demonstrates that he has family and community ties to the Lamar area, the proposed conditions of his release -- that he be released to his daughter's custody, and that S. Esquivel's home be posted as a surety bond of his appearance -- cannot adequately mitigate his temptation to flee.  Additionally, the likelihood that U. Esquivel will pose a danger to the community by continuing to traffic cocaine is high, as U. Esquivel appears to have the resources and incentive to acquire and move more cocaine.  The Court, therefore, denies the Detention Appeal.

The Court conducts a de novo review of the Judge Garcia's Detention Order and must make its own determination whether pretrial detention is proper.  See United States v. Cisneros, 328 F.3d at 616.  After conducting a de novo review of the Judge Garcia's pretrial Detention Order, the Court concludes that, while U. Esquivel has produced some evidence that cuts in his

favor, the United States has ultimately met its burden of demonstrating that U. Esquivel is a danger to the community and a flight risk. The Court will, thus, uphold Judge Garcia's Detention Order detaining U. Esquivel pending his trial.

## I.    THE STATUTORY PRESUMPTION IS PRESENT.

The Grand Jury found probable cause to believe that U. Esquivel aided and abetted the distribution of five kilograms or more of cocaine, and possessed with intention to distribute five kilograms and more of cocaine, contrary to 21 U.S.C. § 841(a)(1), and (b)(1)(a), in violation of 21 U.S.C. § 846.  See Indictment at 1.  "[T]he Tenth Circuit has explained that '[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more.'"   United States v. Moreau, No. CR 07-388 JB, 2007 WL 2219412, at *4 (D.N.M. May 7, 2007)(Browning, J.)(quoting United States v. Silva, 7 F.3d at 1046).  See United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010)("A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which [s]he is charged." (citing United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985))); United States v. Williams, 903 F.2d 844, at *1 (D.C. Cir. 1990)(unpublished table opinion)("Courts of appeals, however, have uniformly held that a judicial officer may rely on a grand jury indictment to establish probable cause for the purposes of triggering the rebuttable presumption of section 3142(e)."  (citing United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986); United States v. Suppa, 799 F.2d 115, 118-19 (3d Cir. 1986); United States v. Dominguez, 783 F.2d 702, 706 n.7 (7th Cir. 1986); United States v. Hurtado, 779 F.2d 1467, 1477-79 (11th Cir.1985); United States v. Contreras, 776 F.2d 51 (2d Cir.1985); United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985); United States v. Mosuro, 648 F. Supp. 316, 318 (D.D.C. 1986))).  Because probable cause exists to believe that U. Esquivel violated the statutory provisions -- which carry a ten-year minimum sentence under 21 U.S.C. §

841(b)(1)(A)(viii) -- a presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3) (stating this presumption applies to Controlled Substances Act violations "for which a maximum term of imprisonment of ten years or more is prescribed").

## II.     THE COURT CONCLUDES THAT U. ESQUIVEL IS, BY A PREPONDERANCE OF THE EVIDENCE, A FLIGHT RISK.

The United States argues that U. Esquivel should be detained pending trial, because he is, by a preponderance of the evidence, a flight-risk, and by clear-and-convincing evidence, a danger to the community.  The United States asserts that it has substantial evidence to show that U. Esquivel will be convicted under 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 18 U.S.C. § 2. See United States' Response ¶ 9, at 3.  As such, the United States contends that no condition or combination of conditions will adequately deter U. Esquivel's flight and ensure the community's safety.

U. Esquivel argues that, in light of his United States' citizenship, and strong family and community ties to his community in Lamar, the Court should conclude that he is not a flight risk. U. Esquivel's daughter, S. Esquivel, has offered to post her home in Lamar, where J. Esquivel and S. Esquivel currently reside, as a surety bond to guarantee his appearance at hearings and trial.  U. Esquivel requests that the Court approve S. Esquivel as a third-party custodian, with certain conditions, including posting S. Esquivel's home as a surety bond, and electronic monitoring or home detention.  See Tr. at 8:20-9:4 (Garcia).

U. Esquivel has met his burden of production in response to the statutory presumption favoring detention.  See United States v. Stricklin, 932 F.2d at 1355 ("The defendant's burden of production is not heavy, but some evidence must be produced.").  His citizenship and the letters in support demonstrate that he has strong ties to home and to the United States.  Although the

burden is met, the presumption "remains a factor for consideration by the district court in determining whether to release or detain." United States v. Stricklin, 932 F.2d at 1355 (citation omitted). The Court also concludes that the conditions which U. Esquivel proposes to the Court for his release cannot adequately deter his incentive to flee. Because the Court "finds that no condition or combination of conditions will reasonably assure the appearance of [U. Esquivel] as required . . . , [the Court] shall order the detention of [U. Esquivel] before trial." 18 U.S.C. § 3142(e)(1).

### A.     U. ESQUIVEL IS A FLIGHT RISK.

The Court finds, by a preponderance of the evidence, that U. Esquivel is a flight risk. U. Esquivel is charged with offenses that carry substantial sentences. The $150,000.00 U. Esquivel, Solorio, and Bustillos had available when they were detained suggests that U. Esquivel has access to financial resources and the ability to travel out of his home state, possibly to Mexico, where he has family ties. Additionally, the United States possesses weighty evidence against U. Esquivel. Accordingly, the Court concludes that, were U. Esquivel released before his trial, it is more likely than not that he would flee.

### 1.     The Nature and Circumstances of the Crime Charged Demonstrate U. Esquivel is a Flight Risk.

The crimes with which U. Esquivel is charged carry substantial penalties. U. Esquivel is charged with aiding and abetting the trafficking of cocaine, and trafficking cocaine, crimes which carry a ten-year statutory minimum term of imprisonment. See 28 U.S.C. § 841(b)(1)(A)(ii). U. Esquivel appears to have a position of authority within a drug-trafficking circle, as he arranged the transaction and organized Bustillo's arrival, and he had access to $150,000.00 in cash, sufficient to purchase a large quantity of cocaine -- approximately 6.9 kilograms. See Lucero Aff. ¶ 20, at 5. U. Esquivel has apparently admitted that his intent was to

purchase cocaine and return to Colorado, and he also told agents that he had been working with Solorio for some time.  See Lucero Aff. ¶ 12, at 4; id. ¶ 21, at 5.  U. Esquivel was the one who negotiated the price with the UCAs and opened the package of cocaine.  See Lucero Aff. ¶ 12, at 4.

The Court has previously noted: "The rebuttable presumption in drug-trafficking cases is statutory, and arises out of Congress' concern that individuals involved in drug trafficking often have foreign contacts and the ability to leave the country, and incentives to remain active in the drug trade."  United States v. Disher, 650 F. Supp. at 1136 (citing United States v. Moreno, 30 F.3d 127, 1994 WL 390091, at *2 (1st Cir. 1994)(per curiam)).  U. Esquivel argues that United States v. Disher does not apply, because the defendant in that case had more serious charges against him, which included possession of firearms, the defendant in participated in a larger drug conspiracy, of which the United States possessed wiretaps as evidence, and the defendant had "actual" foreign ties.  Tr. at 25:24-26:8 (Garcia).  Although U. Esquivel's criminal history is smaller and this federal offense with which he is charged does not involve firearms, the dissimilarities between the two cases largely end there.  The United States suspects that U. Esquivel is involved in a larger drug-trafficking circle and that this alleged offense was not an isolated incident; further evidence to support the United States suspicions may very well come forward at trial.  Additionally, the amount of cash that the Defendants brought to the transaction, their desire to purchase approximately six kilograms of cocaine, and that Solorio expressed a desire to purchase more cocaine, supports the United States' belief that U. Esquivel has engaged in more drug-trafficking than this one federal offense.  This evidence similarly supports a contention that U. Esquivel has access to resources that may allow him to flee -- either through his ties to other drug traffickers or through his financial resources, or both.  Additionally,

although the United States does not have a wiretap of U. Esquivel's drug trafficking, the United States apparently has a recorded admission from him, which is of similar weight to a wiretap. The Court finds, therefore, that the nature and circumstances of U. Esquivel's charged offense support a conclusion that U. Esquivel is a flight risk.

**2.      The Weight of the United States' Evidence Against U. Esquivel Supports Finding that He is a Flight Risk.**

The weight of the United States' evidence against U. Esquivel favors detaining him before trial.  See 18 U.S.C. § 3142 (g)(2).  The affidavit against U. Esquivel is based on sustained interactions with undercover HIS agents who arranged a sale of cocaine with U. Esquivel, and with his co-Defendants, Solorio and Bustillos.  Additionally, the United States apparently possesses a recording of U. Esquivel admitting to the charges against him.  The United States, therefore, may bring forward testimony from HIS agents involved in the transaction, and evidence from the recording to demonstrate U. Esquivel's guilt at trial.  This evidence is weighty.  The United States "need not offer all of its evidence" at the detention stage of the criminal proceeding, and thus, there may be even more evidence of U. Esquivel's guilt that will be brought forth at trial.  United States v. Cisneros, 328 F.3d at 618.  The Court, thus, finds that this factor weighs in favor of pretrial detention.

**3.      U. Esquivel's History and Characteristics Demonstrate that He is a Flight Risk.**

U. Esquivel's history and characteristics further support his pretrial detention.  In 2009, U. Esquivel pled guilty to Possession with Intent to Distribute a Controlled Substance.  See Bail Report at 4.  That U. Esquivel has, now, two charges against him involving controlled substances signals to the Court that U. Esquivel has ties to a drug-trafficking community which may provide him channels for flight.  The USPO notes that U. Esquivel has had "past poor performance under community supervision, and non-compliance with Court orders."  Bail Report at 2.  Although U.

-26-

Esquivel asserts that he has complied with all previous court orders, see Tr. at 10:23-11:1 (Garcia), the USPO's report at least calls U. Esquivel's characterization of his criminal history into question because it states that U. Esquivel has previously not complied with all court orders. He has apparently committed this federal crime while on probation for a state drug trafficking crime, which does not give the Court confidence that he will cease his drug trafficking while on pretrial release. The Court cannot conclude, therefore, that S. Esquivel's custody of U. Esquivel would be strong enough to contain him, given his previous performance on community supervision. Although much of U. Esquivel's family lives in the United States, his father still lives in Mexico, and U. Esquivel traveled to Mexico four years ago to visit his then ill mother. See Bail Report at 2. This relation in Mexico demonstrates, therefore, that U. Esquivel has ties in Mexico, to which he may flee. Additionally, U. Esquivel may have income from other sources besides his paycheck, as he arrived at a drug-transaction, with other Defendants, with $150,000.00 in cash. U. Esquivel's access to outside income suggests ties with organizations or individuals who may attempt to keep him out of court, and his co-defendant, Solorio, boasted ties to the cartel. U. Esquivel more likely than not has more mobility than his income and family situation would suggest, and the possibility of a ten-year sentence could incentivize his flight. The Court, thus, believes that U. Esquivel's history and characteristics, on balance, evince that he is a flight risk.

U. Esquivel argues that the United States cannot meet its burden because he does not have an extensive criminal history, the alleged crime did not involve violence, U. Esquivel has no history of violence, and he has ties to the community that mitigate his incentive to flee. While U. Esquivel is correct that his criminal history is not severe, and he has demonstrated ties to his community, his ties to the community coupled with the charges against him give the Court more

concern than calm.   U. Esquivel brought $150,000.00 to a drug transaction, an amount far beyond that which his income would provide.   U. Esquivel appears to be leading a double life. The Court cannot trust him, therefore, to return to his community and abide by the law, as that does not appear to have been his history in Lamar.

In sum, by a preponderance of the evidence, U. Esquivel is a flight risk, given the serious penalty he faces, the circumstances of his alleged offense, his ties to Mexico, and the weight of the evidence against him.   On balance, while U. Esquivel has presented evidence of his ties to the community, his ties are insufficient to prevent his flight.   In light of the severity of the sentence which U. Esquivel is facing, the strength of the evidence against him, and his ties to Mexico, the Court does not believe it can impose conditions that would adequately deter U. Esquivel's flight, and give itself and Pretrial Services a guarantee that he would appear in court.   U. Esquivel does not appear to have many assets, but he may very well have access to more money and resources through the same person or organization that facilitated this transaction.   The amount of money and the quantity of cocaine purchased demonstrate that U. Esquivel either has direct access to resources or the ability to get access to funds that would allow him to flee.   The Court does not believe that the proposed conditions -- releasing U. Esquivel to S. Esquivel's custody, posting her home as a surety bond, and electronically monitoring U. Esquivel -- are adequate to assure his appearance at court.   Regardless when planned, if he wants to flee, to Mexico or elsewhere, he has the reason and incentive to do so.

### B.        U. ESQUIVEL IS A DANGER TO THE COMMUNITY.

The United States has presented evidence that U. Esquivel is a danger to the community, and the Court believes the evidence is clear and convincing.   Because the United States has presented probable cause supporting U. Esquivel's federal charges, the statutory presumption

that U. Esquivel poses a danger to the community is triggered.  Even though U. Esquivel has met

his burden of production in response to the statutory presumption favoring detention, the

presumption remains a factor for the Court to consider in making its ultimate determination

regarding detention.  See United States v. Stricklin, 932 F.2d at 1355 ("Even if a defendant's

burden of production is met, the presumption remains a factor for consideration by the district

court in determining whether to release or detain.").

U. Esquivel is charged with aiding and abetting the sale of cocaine, and trafficking a

large amount of cocaine, which "threatens to cause grave harm to society."   Harmelin v.

Michigan, 501 U.S at 1002 (stating that the "possession, use, and distribution of illegal drugs

represent one of the greatest problems affecting the health and welfare" of the United States).

Thus, beyond the presumption, the federal charges provide reason to deem U. Esquivel a danger

to the community.  See United States v. Pina-Aboite, 97 F. App'x at 836 (recognizing that the 18

U.S.C. § 3142 "danger-to-the-community factor is not simply about physical violence; the risk

that a defendant will continue to engage in drug trafficking constitutes a danger to the

community" (citing United States v. Cook, 880 F.2d 1158, 1161 (10th Cir. 1989))).   The

community support demonstrated by the letters to the Court point towards U. Esquivel's ability

to hide his drug activity from his family, friends, and community.  Because U. Esquivel appears

to have the resources to continue trafficking cocaine, he would have the incentive and the means

to continue trafficking cocaine if he is not detained.  Although U. Esquivel does not have an

extensive criminal history, his 2009 arrest and guilty plea for Possession with Intent to Distribute

a Controlled Substance, and the current charges against him, create a supposition that he has

been on the path of dereliction for some years, and that previous altercations with the law have

not persuaded him to change course.

In the end, U. Esquivel's danger to the community is closely linked to his risk of flight. S. Esquivel's letter suggests that U. Esquivel has been adept at hiding his criminal activity from his daughter and, thus, she is unlikely to be an adequate third-party custodian. The United States has produced evidence that U. Esquivel was the one who negotiated the price for the cocaine, opened the package of cocaine, handled the money, removed the excess $6,000.00 from the duffle bag, and admitted to agents that the plan was to purchase cocaine and to return to Colorado with it. The scale of this drug transaction and U. Esquivel's role in the transaction demonstrate that this is not a low-level drug deal and suggests that he has access to more funds and drugs. That he was able to hide this drug-trafficking from those closest to him suggests that electronic monitoring, home detention, and release to a third-party custodian who did not have any idea he was involved in illicit activities would be insufficient to guarantee his appearance in court or halt his involvement in the drug trade. If he were to flee, it is likely he would return to drug trafficking here or in Mexico, given that the evidence strongly suggests that U. Esquivel is one who has been employed in drug trafficking at a high level for a number of years.

The risk of flight and danger to community are closely related in U. Esquivel's case. The Court game some thought to placing U. Esquivel at the halfway house under lockdown, taking away all of his access to cellular telephones and restricting him to the residence. While the Court believes that it could take him out of Lamar and reduce to an acceptable level his danger to the community as long as he is at the halfway house, it is concerned that he will leave the halfway house and find his way back to Mexico or elsewhere to resume drug-trafficking activities. The Court could place an electronic monitoring device or location detection device on U. Esquivel, but the reality is that, from Albuquerque, U. Esquivel could, with some help, get to Mexico on Interstate 25 before the Court and law enforcement could scramble to recapture him. In the end,

U. Esquivel's risk of flight makes him too much of a danger to the community to release him on any combination of conditions.  It is likely he would return to drug-trafficking, either in Mexico or elsewhere.

The Court, thus, finds that, "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  The United States has shown, by a preponderance of the evidence, that no combination of the proposed conditions of releasing U. Esquivel to his daughter, or posting S. Esquivel's home as a surety bond, can guarantee that U. Esquivel will withstand the temptation to evade a mandatory ten-year sentence and appear at trial, in light of the evidence mounted against him.  Further, the evidence of U. Esquivel's danger to the community is clear-and-convincing, because the likelihood that he will participate in more cocaine trafficking is high, as he has the ability and incentive to continue this elicit business.  The Court orders, thus, that U. Esquivel be detained before his trial.

**IT IS ORDERED** that Defendant Uriel Esquivel's Appeal of Detention Order, filed November 5, 2012 (Doc. 47), is denied, and the Court: (i) will not vacate the Honorable Lorenzo F. Garcia, United States Magistrate Judge's Detention Order Pending Trial, filed August 28, 2012 (Doc. 19); and (ii) orders Uriel J. Esquivel's detention pending trial.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Jon K. Stanford
  Assistant United States Attorney
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Monnica L. Garcia
Law Office of Monnica L. Garcia, LLC
Albuquerque, New Mexico

*Attorney for the Defendant*